IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| **Plaintiff,** | |
| v. | CRIM. ACTION NO.: 5:23CR60 (BAILEY) |
| CARL DENNIS COLVIN, | |
| **Defendant.** | |

**FILED**

MAY - 3 2024

U.S. DISTRICT COURT- WVND
WHEELING, WV 26003

## REPORT AND RECOMMENDATION

Currently pending before the undersigned on referral from the District Court is Defendant's Motion [21] to Suppress Evidence, filed March 15, 2024. By Order entered March 18, 2024, the Court set a briefing schedule and an oral argument/evidentiary hearing. ECF No. 22. Briefing has been completed, and an oral argument/evidentiary hearing was held on March 26, 2024. At the hearing, the parties presented proffers, evidence, and argument. After considering the briefs of the parties, the applicable law, and the Court record, the undersigned would recommend that Defendant's Motion should be denied.

## I.
## FACTUAL/PROCEDURAL HISTORY

Defendant was indicted on October 3, 2023, on one count of Possession of Child Pornography. ECF No. 1. The indictment arises out of an incident on July 6, 2022, which resulted in a police encounter. On that date, Defendant and his son, who shared a residence located at 2357 Overbrook Avenue, Apartment 4, Wheeling, WV, got into an argument with each other. The argument spilled out into public, and a concerned neighbor phoned police. Police responded to

the scene of the argument in the area of Lumber Avenue in Wheeling, WV. Officers spoke with both the Defendant and his son, Sean Colvin. Sean Colvin reported that child pornography was contained in Defendant's cell phone. Officers obtained a search warrant for Defendant's phone. A subsequent search of Defendant's cell phone revealed child pornography was contained on the phone. Defendant now moves to suppress any and all evidence which resulted from the search of Defendant's cell phone and the statements Defendant made to officers during a custodial interview conducted at the scene. The following evidence was introduced during the March 26, 2024.

A.     **Officer William Castilow's Testimony**

Officer William Castilow is the person who drafted the Search Warrant at issue in this case. He is currently an officer for Wheeling Police Department working in the patrol division. He was working for the Police Department on July 6, 2022. At that time, Officer Castilow was a detective.

With regard to this incident, Officer Castilow testified that several officers were dispatched to Defendant's residence because of an argument between the Defendant and his son, Sean. When officers made contact with Sean on the scene, Sean advised officers that Defendant had child pornography on his cell phone. Officers contacted Officer Castilow to obtain a search warrant for the cell phone. Officer Castilow spoke to Officer Donzella and possibly one other officer. Officer Castilow does not recall many of the specifics of his conversation with officers that day. Notwithstanding, Officer Castilow prepared the affidavit in support of the application for search warrant based upon what Officer Donzella (and possibly Officer Cook) told him on the phone. Officer Castilow did not conduct any other independent investigation prior to applying for the search warrant. Officer Castilow does not recall Officer Donzella saying that the child pornography probably belonged to both Sean Colvin and the Defendant. Officer Castilow

prepared a search warrant for Defendant's cell phone. The search warrant was moved into evidence and made a part of the record as Government's Exhibit #1 – ECF No. 26-1.

Officer Castilow confirmed that he prepared the affidavit in support of the search warrant and did so based upon what officers at the scene advised him. He did not go out to the scene prior to preparing the affidavit. He did not conduct any independent investigation into the credibility of Sean Colvin. Once Officer Castilow prepared the warrant, he presented it to the magistrate, who had no questions or concerns. Officer Castilow was placed under oath and swore to the warrant. Once the warrant was approved, Officer Castilow went to the scene, executed the warrant, and obtained the cell phone.

Officer Castilow did not purposefully withhold information from the warrant or the magistrate that would affect probable cause. Officer Castilow confirms, however, that he did not put into the warrant application every detail of which he was aware at the time. He felt that the details he supplied would be sufficient to support a finding of probable cause. He did not have any concerns regarding the credibility of the information provided to him regarding the cell phone and the warrant. Officer Castilow felt that Sean Colvin was credible because he was reporting his father as the offending party. Based upon the familial relationship between the two, Officer Castilow felt Sean Colvin's statements were credible.

The reporting individual, Sean Colvin, is a sex offender. Officer Castilow does not believe that Sean's designation as a sex offender would affect the probable cause determination in this case because Sean Colvin was/is Defendant's biological son who lived with Defendant.

At the scene, Officer Castilow spoke with Sean Colvin. Sean Colvin indicated that he had been drinking, but Officer Castilow did not believe Sean Colvin appeared to be impaired. Sean responded to Officer Castilow's questions in an appropriate manner.

Officer Castilow testified that the cell phone in question belonged to Carl Colvin and that Carl Colvin paid for the phone. Ownership status of the cell phone (either Sean or Defendant) would not have affected his belief that there was sufficient probable cause to request a search warrant. Officer Castilow did not consider whether Sean Colvin might have been the owner of the cell phone, and thus the child pornography. He does not recall whether other officers communicated to him that they wondered whether the cell phone (and the child pornography) belonged to Sean Colvin. Everything in his affidavit in support of the search warrant was based upon what another officer told Officer Donzella. If Officer Donzella told him that the cell phone belonged to both Sean and Carl Colvin, that is something that would have been added to the affidavit. If the cell phone belonged to both Sean and Carl, that would not affect Officer Castilow's opinion as to whether probable cause existed.

Officer Castilow felt that the cell phone and/or the evidence on the cell phone could be lost or destroyed, i.e., through a factory reset or by dropping it, or some other such method. Officer Castilow instructed another officer to take custody of the cell phone. At the time Officer Castilow gave another officer the instruction, he felt that he had reasonable suspicion and probable cause that a crime had been committed.

Officer Castilow's fellow officers at the scene did not tell him before he applied for the search warrant that Sean Colvin had consumed 9 or 10 bears; that he was a sex offender; or that his crime involved a minor child. Officers never told Officer Castilow what was precisely on the phone or what the images looked like. They never told Officer Castilow that the phone was in Sean's name or that Sean knew the passcode for the phone. However, the fact that the phone was in Sean's name would not affect Officer Castilow's judgment that there was probable cause that child pornography was on the phone.

Officer Castilow advised Defendant about his Miranda rights, and Defendant agreed to speak to Officer Castilow. After this conversation, Officer Castilow obtained another search warrant for the residence.

### B. Officer Cook's Body Camera Video(s)

Officer Cook responded to the scene of Defendant's argument with Sean, and Officer Cook's body camera recorded video of his time at the scene. Defendant submitted a thumb drive to the Court which contained this body camera video. The relevant portions of the body camera video are summarized below.

At approximately 12:21 on the video,[1] Officer Cook[2] makes contact with Sean Colvin following a 911 call which reported a domestic incident between the men. Sean Colvin is seen on the video asking if he should give a cell phone to Officer Cook or if he should take it to "the feds." Officer Cook obtains a name, address, date of birth, and phone number from Sean Colvin. He then obtains the same information from Carl Colvin. Two additional officers arrive at the scene at approximately 12:25. Officer Cook relays Sean and Carl Colvin's identifying information to dispatch. Officer Cook then asks why they are arguing.

Carl Colvin states that his son is friends with someone Carl does not like. Carl thinks this person is a bad influence on Sean. Carl denies that the argument is about child porn on Carl's phone. It appears from Officer Cook's body camera video that Sean is speaking to another officer during this time. Officer Cook then goes to Sean Colvin and the other officer.

---

[1] These events occurred at approximately 9:00 a.m. on July 6, 2022. It is unclear why the time on the body camera video shows a different time frame. This summary will cite the time displayed on the video for ease of reference.
[2] It does not appear that officers ever identify themselves for the body camera video. However, based upon the testimony of Officer Castilow during the hearing, the Court has identified two of the three officers at the scene as Officer Cook and Officer Donzella.

Once there, Officer Cook's body camera records the conversation between Sean Colvin and an unidentified officer (female, dark hair). Sean says child pornography is on the phone. He complains about his father's behavior. He tells Officer Cook to get the consent from his father to search the phone or he is going to "the feds." At approximately 12:29, Sean tells Officer Cook that he gives his consent for officers to search the phone. Officer Cook says he cannot search the phone without Carl's consent. Sean Colvin states that the phone is his father's phone and that it is in Sean's name. Officer Cook and the unidentified female officer discuss how to proceed. Officer Cook suggests seizing the phone and obtaining a search warrant for it. He explains to Sean that if Sean is stating that there is child pornography on the phone, and if Carl does not consent to a search, officers will seize it and obtain a search warrant. The unidentified female officer goes to Carl (off camera) and, according to Officer Cook, is asking for Carl's consent to search the phone. Sean states that he has been drinking. A short time later, the other officer (off camera, but her voice is audible) advises Officer Cook that Carl Colvin has denied consent to search the cell phone.

At approximately 12:32, Officer Cook is contacted by dispatch and is told that Sean Colvin's NCIC reveals he is on the sex offender registry. Officer Cook asks Sean about his sex offender status, and Sean acknowledges that he has been previously convicted of third-degree sexual assault.

At approximately 12:45, Officer Cook goes to stand next to Officer Donzella, who is speaking to someone (unidentified – believed to be Officer Castilow) on the phone. Officer Donzella gives identifying information for both Carl and Sean Colvin and explains why officers were called to the scene. Officer Cook tells Officer Donzella that Sean Colvin is a sex offender. At approximately 12:47, Officer Cook is handed the phone. He begins speaking to "Billy," and recounting the events up until this point, which include that Sean is a registered sex offender, that

Carl and Sean were arguing about Sean's friends, and that Sean says Carl has child pornography on his cell phone. Officer Cook states that Sean knows about the child porn because Sean is able to go into the phone. At approximately 12:47, Officer Cook sees someone hand Carl the phone. He then goes to Carl and asks Carl to put the phone away and not to touch anything. At approximately 12:48, Officer Cook asks the person to whom he is speaking ("Billy") if he should take the phone. At approximately 12:50, Officer Cook ends the call with "Billy," and says he will call Billy back on his (Officer Cook's) phone. At 12:51, Officer Cook asks Carl Colvin for his phone to make sure Carl is "not doing anything with the phone." Officer Cook then takes possession of the phone.

At approximately 12:52, Officer Cook appears to call "Billy" back and advises that he has the phone. Officer Cook advises that Carl denied consent for officers to search the phone. Officer Cook ends the phone call with Billy.

At approximately 12:55, Officer Cook takes a phone call with an unidentified caller (though it seems to be Officer Castilow). At 12:57, Officer Cook advises Officer Castilow that Defendant and Sean are both intoxicated and that the cell phone in question is in Sean's name. He clarifies that Sean is the carrier of the plan, i.e., pays the bill, but that the phone is his father's. Officer Cook then describes the phone for Officer Castilow. Officer Cook seems to remain on the phone with Officer Castilow until this portion of the video concludes. Another unidentified officer (male) appears in Officer Cook's body camera video. Officer Cook recounts the events to this unidentified officer.

At approximately 13:07, Officer Cook questions whether the cell phone is Sean's phone because he has already been convicted of a sex crime. Officer Donzella says, "it's probably both." At approximately 13:19, Sean Colvin states that he is tired and asks what time it is. Officer Cook

7

tells him it is 9:15 a.m. At approximately 13:43, Officer Castilow appears on scene and is visible in Officer Cook's body camera video. The search warrant is served and executed. Officer Castilow then conducts interviews with Sean and the Defendant. Defendant is *Mirandized* before his interview. He waives his *Miranda* rights on video. Both interviews are recorded by Officer Cook's body camera.

### C.   911 Call

The recording of the 911 call which prompted police to respond to the scene was also provided to the Court.[3] On it, an unidentified caller reports that Sean and Carl are arguing and that one is pushing the other. The caller voices concern that someone will be injured if officers do not respond.

## II.
## ARGUMENTS OF THE PARTIES

### A. Defendant's Arguments

Defendant argues that the evidence used in the instant prosecution stems directly from the evidence seized from the search and seizure of Defendant's cell phone, which Defendant argues was illegal. Defendant contends that the initial seizure of Defendant's cell phone was not supported by probable cause, the first search warrant was not supported by probable cause, and officers deliberately and recklessly withheld material information from the affidavit in support of the search warrant at issue. Defendant argues that this evidence must be suppressed, including the evidence found on Defendant's cell phone, the evidence found at his residence, and the statements Defendant made while sitting in a police cruiser during a custodial interview.

---

[3] Though the recording was discussed during the March 26, 2024, hearing, the actual recording was provided following the conclusion of the hearing.

8

### B. Government's Arguments

The Government argues that officers had probable cause to seize and search Defendant's cell phone, that the search warrant in question is supported by probable cause, and that officers did not deliberately or recklessly withhold material information from the affidavit in support of the search warrant at issue.

## III.
## STANDARDS

The burden of proof for a Motion to Suppress is on the party seeking to suppress the evidence. *United States v. Gualtero*, 62 F. Supp.3d 479, 482 (E.D. Va. 2014) ("[t]he legal standards governing a motion to suppress are clear....[t]he burden of proof is on the party who seeks to suppress the evidence") (citing *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981)). Once the defendant establishes a basis for his Motion, the burden shifts to the Government to prove by a preponderance of the evidence that the challenged evidence is admissible. *Id.* (citing *United States v. Matlock*, 415 U.S. 164, 177 n. 14 (1974) ("the controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence").

With these standards in mind, the undersigned will turn to the substance of the arguments raised vis-à-vis Defendant's Motion to Suppress.

## IV.
## DISCUSSION

The primary issue before the Court is whether there was probable cause that child pornography would be located on the cell phone in question. "Probable cause to search 'exists where the known facts and circumstances are sufficient to warrant a man of reasonable prudence

in the belief that contraband or evidence of a crime will be found' in a particular place." *United States v. Doyle*, 650 F.3d 460, 471 (4th Cir. 2011) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Doyle*, 650 F.3d at 471 (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)). Based on the record, the undersigned would conclude that probable cause existed to believe that evidence of a crime, i.e., possession of child pornography, would be found on the phone in question.

### A. Probable Cause Existed to Seize the Cell Phone

Defendant first argues that the initial seizure of the cell phone was illegal because officers did not have probable cause to effectuate the seizure. Defendant appears to argue that there were two seizures by law enforcement: the first conducted by Sean inasmuch as he was assisting law enforcement; and the second by officers at the scene. The Court does not agree that Sean's alleged seizure of the cell phone constitutes a seizure by the government. As Defendant notes, if a private individual intends to assist law enforcement and if an officer "actively encourages, facilitates, or otherwise participates in the private search or seizure," then the Fourt Amendment protections are triggered. *Presley v. City of Charlottesville*, 464 F.3d 480, 495 n. 7 (4th Cir. 2006). Here, Sean may have seized Carl's cell phone and intended to hand it over to police, but there is no evidence in the record that officers actively engaged, facilitated, or participated in this seizure. The cell phone was returned to Carl after Sean's seizure, and Carl had possession of the phone for a period of time before Officer Cook seized the phone. When Officer Cook seized the phone, he had probable cause to do so.

When officers seized Defendant's cell phone, they knew that Defendant's son, Sean, told Officer Cook that Defendant had child pornography on his cell phone. Sean made this statement to Officer Cook in person at the scene. They also knew that Sean and Defendant had been arguing, that Sean and Defendant lived together, and Sean paid for the phone even though the phone belonged to Carl. Officers also knew that Sean had been convicted of a sex offense. Sean's in-person statements about his own father, coupled with his acknowledgement that they were fighting and his explanation as to why, i.e., essentially that his father should not complain about Sean's friends when his father has child pornography on his cell phone, provided officers with a reasonable belief that they would find child pornography on Defendant's cell phone.

Defendant argues that officers should have conducted additional independent investigation to corroborate Sean's statements, particularly in light of his status as a sex offender. Defendant further argues that, given his status as a sex offender, Sean was motivated to accuse his father of possessing child pornography to deflect from his own alleged culpability. The undersigned is not persuaded. Under these circumstances, it was just as likely that because Defendant's cell phone was in Sean's name and Sean paid for the cell phone, Sean was afraid that the child pornography could be attributed to him when it was <u>not</u> his, and he did not want to take the blame for something he did not do. Either way, "there is no requirement that police officers rule out all possibility that a complaining witness has fabricated an elaborate story" in order to have officers take action. *United States v. Queen*, 732 F. Supp. 1342, 1360 (W.D.N.C. 1990). "Nor is there any requirement that police officers attempt to prove by independent evidence that [a complaining witness's] story is accurate beyond all doubt." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213 (1983) "[O]nly the probability, and not a *prima facie* showing, of criminal activity is the standard of probable cause.")). Sean's in-person statements to law enforcement were sufficient to demonstrate the

11

probability that evidence of the crime of possession of child pornography would be found on his father's phone.

Insofar as Defendant argues that probable cause was lacking because the phone in question belonged to Sean and not Carl, the Court would note that even if this were true, it is of no moment as far as the seizure and search of the cell phone are concerned. As seen on the body camera video, Sean unequivocally gave his consent for officers to seize and search the cell phone.

The Court would also note that, at the time Sean was a complaining witness, Sean was making his complaint in person, face to face with multiple officers, and in public. He was making the complaint regarding his own father's criminal activity, which he had allegedly recently witnessed. As such, additional investigation or corroboration of Sean's credibility was not necessary. *See Queen*, 732 F. Supp. at 1359 ("As a citizen reporting a crime she had personally witnessed within the recent past, her reliability need not be established by prior experience in providing information to the police." citing *United States v. Edwards*, 798 F.2d 686, 689 (4th Cir. 1986)).

Finally, although officers seized Defendant's cell phone without a warrant, said seizure was proper. At the time officers seized the cell phone, probable cause existed that evidence of a crime would be found on the phone (child pornography), and that evidence could easily have been destroyed, i.e., deleted from the phone, before officers obtained the search warrant. Thus, officers legally seized the cell phone while waiting for Officer Castilow to obtain a search warrant. *See United States v. Place*, 462 U.S. 696, 701 (1983) ("Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the Amendment to permit seizure of the property,

pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present.").

### B. The Search Warrant at issue Established Probable Cause

Defendant next argues that the search warrant lacked probable cause because the warrant was supported by a "bare bones" affidavit that no reasonably trained officer could have relied on the probable cause finding, and officers did not corroborate or investigate the information provided to them by Sean Colvin. The Court will address each argument in turn.

With respect to Defendant's argument that the search warrant was supported by a "bare bones" affidavit that no reasonably trained officer could have relied on the probable cause finding, the undersigned is not persuaded.

The affidavit in support of the search warrant sets forth the following information:

> On 07-06-2022, at approximately 0852 hours, I (Castilow) was contacted by Ofc. Donzella who stated she and Ofc. Cook were dispatched to the area of Lumber Avenue, Wheeling, Ohio County WV 26003 in regard to a verbal domestic between Sean Lee Colvin and his father Carl Dennis Colvin. Ofc. Donzella stated Sean and his father were arguing over Sean's friends and Sean took his father's phone then began to look through. Sean told Ofc. Donzella he located child pornography within Carl's cell phone which is described as a red Iphone with a white screen.
>
> Ofc. Cook advised Sean had returned the cell phone to Carl who was still on scene. I instructed Ofc. Cook to take custody of the phone in order to prevent any destruction of evidence on the phone.

This is not a "bare bones" affidavit. A "bare bones" affidavit is one that contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Doyle*, 650 F.3d 460, 470 n. 12 (citing *United States v. Laury*, 985 F.2d 1293, 1311 n. 23 (5th Cir. 1993), and quoting *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992)). Here, the affidavit contains more than mere conclusory statements. It provides the facts and circumstances which led Officers Donzella and

Cook to the scene of Defendant's argument with his son, the reason for their argument, and Sean's allegation that he saw child pornography on the phone. The affidavit also describes the phone in question.

To the extent Defendant argues that the affidavit is "bare bones" because the statement concerning child pornography is conclusory, the undersigned would disagree. As was stated above, there is no "requirement that police officers attempt to prove by independent evidence that [a complaining witness's] story is accurate beyond all doubt." *Queen*, 732 F. Supp. at 1360.

Finally, Defendant relies upon *Doyle* to argue that officers should have conducted more investigation into what Sean saw on Defendant's cell phone because "the mere presence of nudity in a photograph, even child nudity, does not constitute child pornography." *Doyle*, 650 F.3d at 473. However, the Court's finding on this point is particular to the Virginia State Statute as written at the time the case was decided: "[t]he mere presence of nudity in a photograph, even child nudity, does not constitute child pornography **as that term is defined by Virginia law**." *Id.* (emphasis added). Further, and again, there is no "requirement that police officers attempt to prove by independent evidence that [a complaining witness's] story is accurate beyond all doubt." *Queen*, 732 F. Supp. at 1360. The undersigned is therefore not persuaded by this argument.

### C. Officers Did Not Make Material Omissions from the Search Warrant at Issue

Defendant next argues that certain "material omissions" from the affidavit in support of the search warrant undermined Sean's credibility, including: that he is a registered sex offender and that he had been previously convicted of sexual assault in the 3rd degree of a minor, that he had drank 9-10 beers prior to his interaction with police, that he had been up all night, and that he was angry with his father. Defendant argues that the Magistrate's probable cause finding was in error and that he is entitled to a *Franks* hearing. The undersigned is not persuaded by these arguments.

14

To make a showing for a *Franks* hearing, a defendant "must make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit; and secondly the offending information must be essential to the probable cause finding." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Here, the record does not establish that officers made a knowingly and intentionally false statement, or a statement with reckless disregard for the truth in the affidavit in support of this Search Warrant. There is no evidence that the statements made in the affidavit are untrue statements. Further, the omissions from the affidavit which are highlighted by Defendant are not essential to the probable cause finding.

As the Court in *Doyle* recognized, there is a distinction between the crimes of sexual assault of a child and possession of child pornography. *Doyle*, 650 F.3d 460, 472 (4th Cir. 2011). There, the Court found that "evidence of child molestation alone does not support probable cause to search for child pornography." *Id*. Thus, Sean's conviction for third-degree sexual assault of a minor, in and of itself, does not necessarily indicate that the child pornography actually belonged to Sean. Even if it did, this is not a relevant consideration for probable cause to search a place or thing: "[t]he critical element in a reasonable search is not that the owner of the property is suspected of a crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Doyle*, 650 F.3d at 471. Additionally, the fact of his conviction for third-degree sexual assault of a minor does not automatically call into question Sean's credibility.

Moreover, Sean's status as a sex offender falls in Sean's favor here: Sean took a risk by telling officers about the child pornography on the cell phone. He arguably had more to lose than his father if officers believed the child pornography belonged to him, and he did not have to tell

officers about the child pornography on the cell phone. Officers were responding to a domestic incident between a father and a son, and not a report of child pornography, so Sean did not have a self-preserving motive to immediately report the child pornography to Officer Cook upon Officer Cook's first contact with Sean. In other words, when Sean Colvin showed Officer Cook the cell phone and told him that he had found child pornography on his father's cell phone, the situation was not one where Sean immediately had to deflect responsibility for what was on the cell phone. Without Sean's statement, it is likely that officers would never have known about the child pornography.

Although Sean admitted to having been drinking, after reviewing Officer Cook's body camera video, Sean does not appear to have been incoherent or unreliable. Similarly, Sean is admittedly upset with his father, but not so upset as to make him an incredible witness. Throughout the video, Sean converses with officers in a rational and coherent manner. He was able to provide a written statement to officers, which is also captured on Officer Cook's body camera video. Additionally, Sean's having been up all night and/or being tired is not essential to the probable cause finding. Sean 'not caring' whether his father went to prison is also not essential to the probable cause finding.

### D. Defendant's Statements

Because probable cause existed to seize and search Defendant's cell phone, Defendant's custodial statements, which were made following a *Miranda* waiver, should not be suppressed.

## V.
## CONCLUSION

Defendant has failed to establish a basis for his Motion. The Government has proven by a preponderance of the evidence that the evidence in question is admissible. Accordingly, and for all of the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's Motion [21] to Suppress be **DENIED**.

Any party who appears *pro se* and any counsel of record, as applicable, may, within **fourteen (14) days** after being served with a copy of this Report and Recommendation file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to parties who appear pro se and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia, to the United States Marshals Service and to the United States Probation Office.

Dated: 5-3-24

JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE

17